on behalf of the F1, Mr. Dennis Doherty, on behalf of the people, Mr. David Bernhardt. Very good afternoon, counsel. Justice Bowman is the third member of our panel. He's unable to be here today, but he will review the tapes of the oral argument before rendering a decision in the case, so Mr. Doherty, you may proceed. Thank you. First of all, Your Honor, I'm a little unfamiliar with the procedure pursuant to Rule 8, and the latest information was that I tendered an oral argument for copies of the decision, two out-of-state decisions that I've cited. I didn't mean to cause a bit of a flurry in the office as to why there was no motion. May it please the Court, counsel, good afternoon to the justices of the Second District Appellate Court. I thank this Court for the extreme honor of appearing before the Court in an oral argument. This is a case premised on Padilla v. Kentucky. This is an appeal of the denial of a motion to withdraw a plea of guilty. The plea of guilty was entered on April 19, 2010, and Padilla had been decided about 20 days earlier to the plea, and the motion to withdraw the plea was filed within 30 days of the plea of guilty. And the Honorable Victoria Rossetti, Chief Judge in Waukegan, conducted a full and fair evidentiary hearing. And in Padilla, the United States Supreme Court held that criminal defense attorneys must give correct advice to clients who are non-citizens about the consequences of a plea of guilty. And that the plaintiff must remain guilty when the immigration consequences are clear and readily ascertainable. The trial judge here indicated that, at least in her opinion, that the counsel did give correct advice in telling your client that he may be deported. Indeed. And which is why I've cited the case from New York, the New York Supreme Court, People v. Garcia. And in Garcia... That's an appeals court? Yeah, it's their intermediary appellate court. Their Supreme Court, they call the Court of Appeals, and that is the Supreme Court. But I've cited People v. Garcia from the Supreme Court of New York, which again is their appellate court, which has similar facts. In Garcia, the lawyer told the defendant he admitted he was ignorant of immigration law. He declined to research the issue for the defendant, and he informed the defendant he should seek outside advice from an immigration specialist. And as the court recited there in Garcia, that defendant having, quote, nowhere else to turn, located some paralegal who he gave some money to, and the paralegal basically told him he had nothing to worry about. That was the wrong advice, because that gentleman, when he flew back from the Dominican Republic, he got conditional discharge there, was grabbed, and was in ICE custody. So the New York Supreme Court said merely advising a client to seek outside advice without order now fails to meet the affirmative duty set forth in Padilla, at least when the consequences are clear. Which is, of course, the correct holding. In drug cases, all drug cases are deportable, except for possession of cannabis less than 30 grams for personal use. Those consequences also, according to the United States Supreme Court, are an integral part of the case. It's no longer collateral. You said the consequences are that he's deportable. That is the law. It's not might. It's not could. It's not possible. There are no people living in the United States now that have been convicted of drug cases that haven't been deported? No, it happens a lot. And the attorney who testified here, there's no rhyme or reason to it. That is the case. But that's not the law. And that's not correct advice. And in Padilla, I think in Padilla, the guy said he had nothing to worry about because he'd been here 40 years. That's not the law. Well, let's talk about the facts of this case. In this case, your client was indicted in 1999, jumped bail, fled, and now is back. His lawyer tells him if you're convicted, there's a risk of deportation. You should speak to an immigration lawyer, which your client did, correct? Yeah, he spoke to them, but they gave him a bunch of papers to give to the lawyer because he thought he could negotiate some other outcome. And then on the day of the plea, when he did plead guilty, he's also informed by the trial court that this conviction carries with it the risk of deportation, correct? That is correct. None of that was inaccurate. Your argument is that you have to go a step further and say that you're automatically going to be deported despite the fact that there are thousands of convicted drug offenders who are illegal aliens living in the United States who are not behind bars who are living free among us, correct? I agree. This gentleman is not an illegal alien. He had a green card. He's a lawful permanent resident. But the law is not, and I shouldn't use that term, I should say removable, who are convicted, they're removable, but it's not automatic until after a hearing, and then it's automatic, correct? Absolutely. And as Padilla pointed out, there were methods of avoiding it until the recent federal law was enacted, I think it was 1996, but the current policy of the administration is to be rather aggressive. I think they've deported about 400,000 undesirables, people convicted of crimes. And yeah, a lot of people fall through the cracks. This gentleman is still working every day. He's finished his probation successfully, but he's going to come up for a review for a green card in fall of 2013. I spoke to his immigration lawyer yesterday. She says when they see that, boom, they're going to lock him up, put him in the immigration detention center, and that's it. But the real issue here, Your Honor, is what is the duty of the criminal defense lawyer? It's not might. The law is mandatory. Deportation is mandatory. You can tell them, we have no idea why the federal government picks certain people and doesn't, but that's not the correct legal advice. The law provides it to be mandatory. That's what the lawyer has to tell the guy, not might. If you jump off the top of the search tower, you might be injured. But he didn't say might. He said it carries with it a risk of deportation. Isn't that what he, isn't that the terms that the lawyer used? Now, that is not the whole story. It's really misleading. And that's not the correct advice. And he also is saying at the same time, I don't know this law. I don't know this immigration law. You gotta go check with somebody else. But to my limited knowledge, could, might, it's possible. Those are the words, and those words are significant. Obviously, he is an honest lawyer, and he's testifying honestly. He could have testified until this gentleman was mandatory. But he didn't say that. He said what he told him. And he said, you gotta go check with somebody else. The New York, the only case on point I found was a New York case where the lawyer did. And they in a footnote in Garcia, they said, this is a very good criminal lawyer who's argued before this court multiple times. In the New York case, did the trial court also admonish? Absolutely. They did. And again, they said that does not supplant the right or the duty of the attorney. It's not the judge's job. It's the lawyer's job. And that's all you gotta do. And we are often, we criminal defense lawyers are often the bearer of very bad news, especially when we're dealing with major felony cases. What is to be shy about? But what if this lawyer said you will be deported? Yes. And then the person goes in front of the judge and the judge pursuant to statute admonishes him that you may be deported. Does that nullify what the lawyer said? The lawyer says you will be. The judge, according to our statute, our statute is very clear. It says may be deported. You may face the risk of deportation or denied lawful entry and all that. So how does this judge in our case did in fact admonish under that rule under the statute? Well, I believe that the statute says may or could. And so how does that jive with your argument under Padilla and Garcia? And I would also note that Garcia, my humble opinion is this is a trial court case, but I mean, I certainly understand you. It's not a state anyway, so it's just being offered for persuasive value. But the Supreme Court, Kings County would be a trial court. I understand. I may be wrong. I may be wrong, but I'm not really that up on New York law. But I do know that there's only one judge deciding this is Judge McKay in Kings County. I separate. I sit and I don't remember a lot popping up, but I'm not. I understand what it says, and I understand how it's supposed to position. Certainly, it still can be persuasive. But to answer your honest question, I believe the statute is inadequate, and I argue that in my brief. It is not good. That is not the full story. And the duty is of the lawyer. And I don't know what the future holds in store, but if it's, you know, we didn't always have written jury waivers. I mean, we have them in Cook County, but it wasn't even brought up. And a bunch of people have filed appeals saying nobody told me about my right to a jury, and there were appeals everywhere. Now we've got to do a written jury waiver. It would have been adequate in this case. I mean, would the attorney have had to say you will for certain for sure be deported? Or what if the attorney had said you most likely will be deported or you probably will be deported? Where do we draw the line here? I mean, we're talking about in Padilla, the person was totally misinformed about the risk of deportation. And we also know that if the lawyer says nothing about deportation, then that's ineffective. But when a lawyer does actually inform of the risk of deportation, where's the level here? I mean, we have to hit a level where we, you know. I fully agree. And that is what Justice Stevens in Padilla said. If the consequences are clear, the duty is to give correct advice. The correct advice is your deportation is mandatory. The holding language in Padilla, the holding of the court, is that where the consequences are clear, then the lawyer must inform his client of the risk of deportation. So you're saying that you have to not just say what the risk is, but modify that with saying this is not just removable. This is, you will be removed. That's your argument, correct? That is the law. That you have to fill in the word or modify the word what the risk is. And the holding in Padilla, I know the language you're talking about, but the specific holding in Padilla says that the attorney must inform the client of the risk of deportation. Would you agree with that? I do not, because that's the state's argument. But I think my report would agree with that. That is the state's position. And that's what Justice Maliotta said in his concurring opinion, concurring in his judgment. And in the Garcia case, there's a footnote talking about that. That language, and that's from the state's brief, the state recites in Padilla v. Kentucky, the court held the counsel must inform his client whether his guilty plea carries a risk of deportation. State brief, page 2. That is only when the law is not succinct and straightforward. When the deportation consequence is truly clear, the duty to give correct advice is equally clear. So, yeah, you can tell a guy there's a risk of this if he's charged with telephone harassment or something like that. But if it's a drug case, it's mandatory. Let me read this language. This is the holding from Padilla. It is our responsibility under the Constitution to ensure that no criminal defendant, whether a citizen or not, is left to the mercies of incapable counsel, citing Richardson. To satisfy this requirement or this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Yes. And in that case, the primary holding was that it's no longer collateral, as it was in Illinois, as it was in New York. I'm not sure of federal law, but it's now direct. It's an integral part of proceedings. But that holding, there's two types, I suppose. There's two types of warnings to give. If it's not succinct and straightforward, all you've got to do is tell them it carries a risk of deportation. And it's not clear. But in drug cases, all you've got to tell the guy is you are going to be deported. There is no way around that. That's not what this guy was told. So that holding is a summarization of the two types of advisements that the court identifies. If it's not succinct and straightforward, we really don't know what's going to happen. But if it's a drug case, and that's what Padilla was a drug case, and that's what Garcia was a drug case, and this is a drug case here, there is no exception. It's not might or could. And I don't mean to be jovial, but again, and my undergraduate degree was in English, but if you jump off the top of the Sears Tower, you might be injured, you could be injured. If you told that to someone, a child or something like that, you're not giving accurate, correct advice. You will be injured. That statute has no exceptions, and we call the expert witness that testified their honor. Now, even if the federal government doesn't enforce their laws, I suppose you can tell the guy that it's possible, anything's possible, the law can change. But right now, it's mandatory deportation for a drug case. Counsel, thank you. Your time is up. You will have time for rebuttal argument. Thank you very much. You're welcome. Mr. Burnett. Good morning, your honor. Good morning. Afternoon, your honors. I agree with Justice Burkett that the holding in Padilla is what you stated. I have that actually written in my notes. I think what defendant's attorney here wants is not reasonable assistance of counsel with stricter mandates, but perfect assistance of counsel. And I don't think there's any perfect trial or perfect counsel. We all make mistakes. This was a mistake, though. The reality was, is that it's hit and miss whether this person would be deported or not. That was their, the immigration attorney, his expert's opinion. It was the opinion of the immigration attorney who talked to the defendant and told him several times that he could be deported. It was the advice that the defense counsel gave him, which he said numerous times at first meeting, you could be deported on this. If we get into these semantics, I think this defendant knew, was certainly apprised of the fact that there was a very good chance that he was going to be deported. There was also a very good chance he was going to the penitentiary if the case went to trial. Correct. Correct. And that was something he had a way. He was admonished by the judge also. It's clear he knew exactly what he was up against here. I mean, he even stated at the hearing that his defense counsel told him a bunch of times that he could probably be deported. It was part of his decision. I don't think we can have perfection under this. I don't think Padilla asked for that. Certainly Strickland doesn't. And as far as the cases from New York, I agree with Justice Burt that that is just the trial court decision, the Garcia one, the other appellate court decision. In those two cases, counsel didn't even tell him that there was no immigration consequences. I mean, that was misadvice. It wasn't a failure to give advice. They were saying there's no consequences. The same thing happened in Padilla. I don't think the Supreme Court would say this is the same situation. In fact, it's quite different. I don't know why the Supreme Court went out on a limb either here when they clearly under Padilla could have limited it to the facts of Padilla. But the majority opinion does say, support counsel's argument, that when the law is not succinct and straightforward, an attorney need do no more than advise a non-citizen client that a pending criminal charge may carry a risk of adverse immigration consequences. But when deportation is truly clear, as it was in this case, the duty to give correct advice is equally clear. So the issue is what is correct advice? And we do have the special concurrence that basically says all you need to do is say may or could. So I mean, basically it's taking issue with this majority decision that if the law is clear that you're subject to deportation, that you have to do more than may or could. And that's what Garcia read into Padilla. Right. But I think ultimately that was their discussion. And I think it was kind of raising attorney's consciousness that let's be really careful here. But ultimately, their holding was holding a specific statement that Justice Burkett had discussed that you must inform the client, OK, that he could be deported. And we do have the concurring opinion here. I think they left it up to the lower courts and the states to make that decision. But I think as a matter of looking at Strickland and all the Strickland cases that you, Your Honors, have looked at, that we all know that it's not perfect advice, but it's reasonable advice. There's just no way this raises up to not being reasonable advice. This attorney told him a number of times. The defendant admitted it. The trial court admonished him. He went to an immigration attorney. She told him a number of times. He or she, I don't know. He was apprised of that fact. I think certainly under the law, that is reasonable assistance. One, because, you know, we've made that first prong. And two, there was certainly no prejudice here. He was on bail when he entered his plea of guilty, correct? I'm pretty sure that's correct. How was he subject to bail after having jumped bail several years earlier? I think that's related to the decision. You know, I don't think that was, I'm not quite clear on that, and I don't think the record makes that quite clear. In fact, the record I think is, I would have talked about overwhelming evidence. There's a case out of the First District called Gutierrez that talks about overwhelming evidence. But in that case, I really didn't, the record didn't show me too much about the evidence. So I didn't really cite that case. But the fact is, there was no prejudice because he talked to an immigration attorney and he was admonished by the trial court. And so, thus, I believe logically that there was certainly no, you know, ineffectiveness of counsel. The trial court relies specifically on the competence prong of Strickland. I mean, the trial court, correct me if I'm wrong, if you read this differently, tell me. The trial court seemed to say since the expert said that he may be deported and things could happen where he might not, by telling him he may be deported was not incompetence. It never got to prejudice. I think that's the way I read it also. And the fact is, I think that's true because that is the reality. As your allies were asking defense counsel before, there are literally thousands of people that slipped through the cracks. We can't tell. I think they gave him the best advice that you could give them at that time. You know, the probability is it could, might. We get into semantics, but I think that put the defendant on notice, given the fact that there was probably pretty good evidence and he was going to go to the penitentiary one way or the other, that he pled guilty. I just don't see how we can ask anything more out of a defense counsel. Well, the defense counsel could have looked at the provision, which said, you know, it's a drug conviction. It's automatic. I think he could have. Yes. And that was that. That would be perfect advice. But that wasn't done. The thing is, his counsel could have read that. But then he said, you know, you're supposed to be deported. But in my experience, I've had classics defendants not deported and misdemeanor defendants deported. So he's talking reality situation. I just don't think we should hold him to any more than that. Is there any other questions? Thank you. Yes, your honor. He's got to jump on. In 99, he's apprehended working a snowplow in 2010. Went to a bond hearing in Waukegan and they gave him a bond. I think the jail may have been overcrowded or something like that. But under the law, he's not even available. He's not supposed to be. He wouldn't get out of New Page County. He wouldn't get out of Cook County. And anywhere in the state of Illinois. I don't know, sir. He's awful lucky to do. Yes, he is. In any event. Let me ask you this. Counsel just talked about realities and the fact that defense counsel, trial counsel talked in realities, not in with respect to the verbatim, what the statute might provide that upon a drug conviction, you are removable, which is what the statute says, correct? You find a drug conviction other than a low level. That's it. Automatic. You are removable. But what the counsel discussed with him was the realities that I've had clients who have been convicted of class X. They don't get deported or removed. Clients convicted of misdemeanors who are. So you're not having a conversation in a bar. You are a lawyer. I have to give correct advice. And when it comes to you, you've got to give the advice. That's the lawyer's job. And the lawyers don't get it straight. What's going on with the deal says you've got to tell these guys that you've got to tell them that that could might maybe the guy get away with it. He sure got a real good deal. I agree. But part of the deal was he he's going to get deported. OK, maybe not, whatever. But that's not the law. And what what is the water going to do? You're going to keep getting these petitions. The trial courts are motions of withdrawal and post conviction or whatever. I'm going on a record telling the judge that I've got one where I call the guy and they file a they file a PC down in Cook County saying they didn't tell the guy. That's weird. I've got the same issue. I'm raising an appeal out there in Elgin. So they got to know the non-citizens. These are very vulnerable people. This gentleman doesn't speak English well. He's a laborer, a Filipino, and he's sneaking back and forth. You can't tell them we're not sure. I don't know that much about this stuff. If you go to see a doctor and you've got terminal cancer, what do you want the doctor to tell you? I don't know much about cancer. Maybe you'll die. You could. It's possible. You got to know. And I think that's what the courts should require of the lawyers, because it is about as easy as pie. You are going to be deported. That's the law. Now, if he says, well, I heard maybe they won't catch her and maybe they won't enforce it. Maybe, but that's not the law. I certainly appreciate the honor. Thank you very much for your arguments today. We will take the case under advisement, render a decision in due course. We are adjourned.